# SUPREME JUDICIAL COURT

##### FOR THE

## COUNTIES OF BRISTOL, PLYMOUTH, BARNSTABLE AND DUKES COUNTY, OCTOBER TERM 1840, AT TAUNTON.

═══════

##### PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL PUTNAM, ⎫
Hon. SAMUEL S. WILDE, ⎬ Justices.
Hon. CHARLES A. DEWEY, ⎭

---

### Job S. Whiton *vs.* The Old Colony Insurance Company.

The owner of a vessel, who was also master thereof, procured insurance on her and on property on board, at and from H. in the coasting business, for a specified time, with the usual clause, in the policy, of indemnity against loss by fire : *Held*, that the term " property " included current bank bills owned by the assured, and on board the vessel for the purposes of the coasting business, and that the underwriters were bound to pay for the loss of such bills by fire on board the vessel.

In a suit against underwriters, to recover for a loss of bank bills, on a policy covering a certain amount of " property " on board a vessel, the judge, who tried the case, instructed the jury, that in the absence of fraud, the amount insured had some slight tendency to prove the amount of bills on board : *Held*, that this, being only a remark upon the state of the evidence, was not a ground of exception.

THIS was an action on two policies of insurance. The first was dated March 25th, 1837, for $ 1200 on the schooner Meridian, and for $ 600 upon property on board said schooner.

from March 27th to December 1st, 1837. The second was dated September 29th, 1837, for $2000 upon property on board said schooner, at and from Hingham, on the 2d of October to the 2d of December, 1837, in the coasting business, with liberty to carry the value of $200 on deck, from Hallowell to Hingham. Both policies contained the usual clause of indemnity against loss by fire.

The plaintiff's claim was for the loss of current bank bills of various denominations, issued by banks in this and the neighboring States, and deposited in the cabin of said schooner, and destroyed by fire on her voyage from Hingham to Hallowell, within the time limited by the policies.

On the trial, before *Morton*, J. the plaintiff proved that he was owner and master of the schooner, and also proved the loss of bank bills by a fire in the cabin of the schooner, on the 13th of October, 1837. It was also in evidence that there was merchandise, belonging to the plaintiff, in the hold of said schooner, which was not injured by the fire.

The judge instructed the jury that such loss of bank bills, owned by the plaintiff, was within the terms of the policies, and that, in the absence of fraud, the amount insured in the policies had some slight tendency to prove the amount of bills on board the schooner.

A verdict was returned for the plaintiff. New trial to be granted if either of said instructions was wrong; otherwise, judgment to be entered on the verdict. The defendants also moved for a new trial, on the ground that the verdict was against the evidence.

The case was argued at a former term.

*Beal & Bartlett*, for the defendants.

*Sprague*, for the plaintiff

SHAW, C. J. The main question in the present case is whether, by this policy, current bank bills were insured under the name of " property," and whether the destruction of such bills by fire is a loss within the policy.

Several circumstances must be taken into consideration, in judging of the intentions of the parties to this contract; it being,

after all, a question of intention, to be decided by the terms of the policy, the relations and circumstances of the parties, and the known usages and customs of the business, to which both parties are presumed to assent, when the contrary does not appear.

The insurance is upon " property," a term of the largest import ; and this not thrown in after a more specific enumeration of particulars, but as the only term used by the parties, to embrace the whole subject matter of their contract.

Again, it was an insurance on time, and of course looked to the future, which, at the time of making the policy, was unknown and contingent, and not, as in case of insurance upon a voyage, on property actually shipped and about to be put on board. This is an obvious reason why they should use a generic term, embracing every object of value, which the assured might have occasion to carry on board the vessel, during the period embraced by the policy.

It also appears that the assured was master and owner of the vessel, and this must be presumed to have been known to the defendants. One of the policies (that made on the 25th of March, the commencement of the season) contains also an insurance of the vessel; by which it appears they knew that the plaintiff was owner. The second policy, which is for two months, insures $ 2000 on property on board the schooner Meridian, in the coasting business, with liberty to carry $ 200 value on deck, by paying an additional premium.

Under these circumstances, we think it must have been understood by the parties, that the plaintiff was about employing his vessel to carry his own property from place to place in the coasting business, and that this must be for the purpose of traffic, buying, selling, or bartering ; and we are therefore of opinion, that by using the generic term " property," they intended to cover, not only goods, wares and merchandise, on board, but money taken in exchange for merchandise, or carried for the purpose of purchasing merchandise.

It is stated by Mr. Justice Park, in his work on insurance, (7th ed.) p. 26, to be a question, whether a cargo of dollars, or other coin, jewels, &c., if lost, be recoverable under a policy

upon goods and merchandise generally. He declines expressing
an opinion explicitly ; but the English and foreign authorities
cited tend to show that money would be covered by such an in-
surance. *Da Costa* v. *Firth*, 4 Bur. 1966. In Marshall on
Insurance, (3d ed.) 327, it is stated, that in England, it is usual
to insure foreign coin, jewels and bullion, generally as merchan-
dise ; but that it is not understood that the insurer is liable
for the risk of a clandestine exportation. In Hughes on Insur-
ance, 128, it is stated, that the general description of goods is
sufficient to include a cargo of gold and silver, coined or un-
coined, pearls and other jewels, provided the conveyance of
them be lawful. And 1 Phillips on Insurance, (1st ed.) 66,
states that the precious metals, coined or uncoined, undoubtedly
come within the general description of goods, wares and mer-
chandise, except in the case of clandestine trade.

But whatever the construction of a policy may be when the
insurance is upon " goods, wares and merchandise," we think
there can be no doubt, that under the larger term " property,"
money carried for the purchase of cargo, or received for the
sale of cargo, would be included. Such insurances upon specie,
upon adventures to China and elsewhere, must be very common
in this country. No doubt can exist, that insurance may be
made ; the only question is, whether it is included in the general
form of words, without being specifically designated.

Supposing money, carried for the purpose of purchasing a
cargo, to be insured under the term " property," does it make
any difference that the money consists of current bank notes,
that is, bills taken for the like purpose, to be used as money ?
There is no direct authority upon this subject. It is said to
have been ruled by Mr. Justice Dampier, at the Cornwall sum
mer assizes, 1815, in the case of *Thomas* v. *Royal Exchange
Assurance*, that an insurance of goods and merchandise will cov-
er dollars, if entered at the custom house, but not bank notes.
Manning's Digest, (ed. of 1820) Insurance, B. *a.* This case is
reported, 1 Price, 195, but wholly upon other grounds, and the
point in question is not mentioned, nor the facts on which it
arose at *nisi prius*   This dictum is cited by Hughes, p. 128,

and in 1 Phillips, (1st ed.) 66. No other facts or circumstances are mentioned ; it does not appear whether bank notes were taken to be used as money, to purchase a cargo, or as the proceeds of a cargo sold, or under what other circumstances. Besides, a distinction may be well taken between an insurance of goods, wares and merchandise, and an insurance on " property " ; and it might well be held that bank notes would fall within one of these descriptions and not within the other. This opinion therefore cannot be considered as an authority having any direct bearing upon the present case ; and the question remains to be decided upon general principles.

It cannot be doubted that in the popular sense, and the understanding of business men, bank notes are considered as cash, and of course are included under the general name of " property." The legal title to them passes by delivery. They constitute a good legal tender unless objected to on that account; if tendered in payment of a debt, and received, although the receiver protests against receiving them at their value as cash, and claims to take them at their current value in market, still, if he receives them, such receipt operates as the payment of such debt. *Phillips* v. *Blake*, 1 Met. 156.

It has been argued for the defendants, that there is a manifest distinction between bank notes and other species of property, in this, that they are of no intrinsic value ; that, after all, they are mere contracts to pay money ; that they constitute evidence of debt, but that a loss of the evidence is not a loss of the debt. It was also urged, that if the assured had taken the precaution to procure evidence of his having particular bank notes, on proving their destruction by fire or otherwise, he would have a legal right to recover against the bank. And it was further argued, that if it was intended that the insurance should extend to bank notes, notice ought to have been given to the underwriters, that they might have taken such evidence as to secure their recourse against the bank, in case of their destruction.

This argument is entitled to great consideration ; but looking at the subject in a practical view, we do not think it affords suffi

cient ground to warrant a different decision in the case of loss of bills, taken as money, and specie taken for the like purpose.

In the first place, construing the contract of practical men, and men of business, we are bound to inquire how they probably consider it. It is true that a bank note cannot be melted down into an ingot, retaining substantially its intrinsic value. But to most purposes, the loss of a bank note is as much an entire loss of its value to the owner, as the loss of a coin of the same amount. And in case of a loss, by many of the perils insured against, the loss would be entire and complete ; and although the assured had taken the precaution of having the most plenary evidence of the existence and identity of the bills, he would have no recourse against the bank. Loss by hostile capture or detention, by pirates or assailing thieves, by barratry, or even by stranding, would be of this description. Where the bank notes remain in existence, though lost to the owner, the bank, on presentation, would be bound to pay them to the holder, and of course would not be bound to pay the loser of them. It is only in the case of their absolute destruction, that the bank would be liable, and then upon plenary evidence of their having been held by the assured, and destroyed whilst so held. The assured, in the event of such destruction, must bring as many suits, as there were banks whose bills he held. Considering the great number of banks, the rapidity with which bank bills circulate, and the extreme difficulty of making the necessary proofs, and the remote contingency upon which alone the assured would have such a recourse to the banks, it must be considered, practically, as of little value.

In regard to that branch of the argument, that the plaintiff's loss was merely that of the evidence of a debt, and not the debt itself, we think it is an answer, that that evidence, be it a bank note, promissory note, bond or other document, is itself property, and may be sued for and recovered in an action of trover. And if the evidence of property be such, that the possession of it will enable the owner to recover a sum of money on request, and without the possession of it he can recover nothing, the loss of the evidence or voucher will be equivalent to the loss of the

debt; and where a party has a right to recover damages for such loss, the debt itself will be the measure of damages. We have no doubt that if bank notes had been insured specifically, in case of loss by any of the perils insured against, the assured would have had a right to recover in damages the par value or nominal value of the current bank bills ; and yet the aigument would have been of the same force, that the loss of the bills was the loss of the evidence of the debt, and not of the debt itself. If this would be so, then we think it comes back to the question of intention ; did the parties regard bank notes as included under the name of " property " ? A case is mentioned in a note to *Delegal* v. *Naylor*, 7 Bing. 462, in which certain *billettes*, a species of exchequer bills or treasury notes, issued by the government of Peru, had been insured and lost by perils of the sea. No decision is given and no further mention of the case is made in the reports, that I am aware of. But from what took place in the case to which the note was appended, there is little reason to doubt that an action on such a policy might be sustained, and that the *billettes* would be estimated at the price of exchange with Peru.

In regard to the suggestion, that in case of an insurance on bank notes, they should be particularly described as such — were it a particular shipment of bank bills, made before the insurance, it would present a different question. But this was an insurance on time ; it was future and contingent; and it was unknown, at the time of the insurance, what the property, intended to be covered by the policy, would from time to time consist of. In general, the rule is, that the assured need not specify the nature of the property, unless inquired of ; and if the underwriter wishes to know more particularly, he must make the necessary inquiries for the purpose.

On the whole, the court are of opinion that by these policies, the parties intended that the plaintiff should have his property insured, for the period covered, in the coasting business, to consist of a series of coasting voyages, in which the property might assume various forms, as it should be bought, sold, exchanged and bartered ; and that the policy was intended to cover mer-

chandise, and money, including such current bank bills as should be taken and used as money ; and that the destruction of these bank bills by fire was a loss within the policy, and that the plaintiff is entitled to recover.

One or two other questions were argued. One was an exception to the suggestion of the judge, that in the absence of fraud, the amount insured in the policies had some slight tendency to prove the amount of the bills on board. In regard to this, we think it stated no legal proposition, and gave no direction upon any point of law ; it was a remark upon the facts of the case, and, as such, does not constitute a ground of exception. *Davis* v. *Jenney*, 1 Met. 221.

On the motion to set aside the verdict as against evidence, it appears to the court, that the evidence was extremely loose, vague and indeterminate. But it was not objected to as incompetent, and we cannot say that the jury came to a wrong conclusion upon it.

*Judgment on the verdict*